1  Scott Schools
   United States Attorney
2  450 Golden Gate Ave (11th Floor)
   San Francisco, CA 94102
3  Telephone: (415) 436-7200

4  Attorneys for the United States

*FILED*
*DEC 13 2007*
*CLERK*
*NORTHERN DISTRICT COURT*
*SAN JOSE CALIFORNIA*

5              UNITED STATES DISTRICT COURT
6              NORTHERN DISTRICT OF CALIFORNIA
7                    SAN JOSE DIVISION

8  UNITED STATES OF AMERICA,          )   CRIMINAL NO. *07-70739 PVT*
9         Plaintiff,                  )   *Underseal*
10                                    )   NOTICE OF PROCEEDINGS ON
       v.                             )   OUT-OF-DISTRICT CRIMINAL
11                                    )   CHARGES PURSUANT TO RULES
   *Jared Cantu, Anna*                )   5(c)(2) AND (3) OF THE FEDERAL RULES
12                                    )   OF CRIMINAL PROCEDURE
       Defendant. *Cantu*             )
13                                    )
                                      )
14

15     Please take notice pursuant to Rules 5(c)(2) and (3) of the Federal Rules of Criminal

16  Procedure that on _____, the above-named defendant was arrested based upon an

17  arrest warrant (copy attached) issued upon an

       ☒ Indictment    ☐ Information    ☐ Criminal Complaint    ☐ Other _____
18
    pending in the *Eastern* District of *Virginia*, Case Number _____.
19
       In that case, the defendant is charged with a violation(s) of Title(s) *18* United States Code,
20
    Section(s) *371/1325(c)*
21
    Description of Charges: *conspiracy, marriage fraud*
22

23
                                              Respectfully Submitted,
24
                                              SCOTT SCHOOLS
25                                            UNITED STATES ATTORNEY

26  Date: *12/13/07*
                                              _____
27                                            Assistant U.S. Attorney

28

                                              1

**SEALED**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Norfolk Division

FILED
IN OPEN COURT
NOV 2 0
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **UNDER SEAL** |
| | ) | |
| v. | ) | Criminal No. 2:07cr 219 |
| | ) | |
| JARED CANTU, | ) | 18 U.S.C. § 371 |
| (Counts 1-2) | ) | Conspiracy |
| | ) | (Count 1) |
| and | ) | |
| | ) | 8 U.S.C. §1325(c) |
| ANNA CANTU, | ) | Marriage Fraud |
| | ) | (Count 2) |
| (Counts 1-2) | ) | |
| | ) | |
| Defendants. | ) | |

**INDICTMENT**

NOVEMBER 2007 TERM – At Norfolk, Virginia

**Introductory Allegations**

THE GRAND JURY CHARGES THAT:

At all times relevant to this indictment:

1. Aliens who wish to become lawful permanent residents of the United States and eventually become naturalized United States citizens may avoid the numerical restrictions on the number of immigrants allowed in the United States, as well as certain visa and other requirements imposed by the law, by becoming the spouse of a United States citizen.

2. A United States citizen may petition the government of the United States to grant an alien spouse lawful permanent resident status without regard to the numerical restrictions noted previously by filling out a Form I-130 (Petition for Alien Relative).

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT

BY _____
DEPUTY CLERK

3. An approved immediate relative visa petition allows an alien spouse to file a Form I-485 (Application to Register Permanent Resident or Adjust Status) requesting that the United States Government adjust the alien spouse's status to that of a lawful permanent resident without the alien having to leave the United States. If the alien cannot adjust status this way, the alien must leave the United States, obtain an immigrant visa at a United States embassy in the alien's home country, and reenter the United States.

4. Forms I-130 and I-485 are typically filed together and the visa petition and adjustment application are adjudicated at the same time. In support of these applications, the United States citizen spouse and the alien spouse each submit Biographic Information forms (Form G-325A) containing biographic information.

5. Title 8, United States Code, Section 1325(c) provided that it is a crime to "knowingly enter into a marriage for the purpose of evading any provision of the immigration laws."

6. The United States Navy provides certain service members a Basic Allowance for Housing (BAH) to help offset the costs of suitable housing for its members. Only certain classes of service members, such as service members who have dependants, are eligible for BAH. If a service member is eligible to receive BAH, he normally must file the appropriate paperwork at the local personnel office certifying his eligibility. The service member becomes eligible for increased BAH once he is married to a spouse who is supported by the service member. Once his paperwork is properly filed, BAH is disbursed to a service member along with his base pay and any other pay to which he may be entitled on a bi-monthly basis. If the service member's circumstances change in such a manner that he is no longer eligible to receive BAH, it is the

service member's responsibility to return to the local personnel office and file the appropriate paperwork to discontinue the BAH payments.

7. Co-conspirator Ruslana V. Katushynska was born in Kamenets-Podolskly, Ukraine. According to information she reported, she entered the United States on a B-1 visitor visa on December 12, 2004. Her visa expired on March 4, 2005 and after that date, she was an overstay and illegally present in the United States.

8. Co-conspirator Michael Grant Metal was a United States citizen and an active duty service member in the United States Navy, stationed in Norfolk, Virginia.

9. Co-conspirator MTV was a male United States citizen and an active duty service member in the United States Navy, stationed in Norfolk, Virginia.

10. Co-conspirator EAP was a female Ukrainian national residing in Pennsylvania. She arrived in the United States on July 13, 2002 on J-1 student worker visa. Her visa expired on April 21, 2003, and after that date, she was an overstay and illegally present in the United States.

11. Co-conspirator Olena V. Oliynyk was a Ukrainian national who had lawful permanent resident status in the United States.

### Count One

1. The allegations contained in paragraphs one through eleven of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2. In the period from in or about April 2005 through June 20, 2006, in the City of Norfolk, Virginia, in the Eastern District of Virginia and elsewhere, the defendants JARED CANTU and ANNA CANTU and others both known and unknown to the Grand Jury, knowingly

3

and unlawfully combined, conspired, confederated and agreed together and with each other to commit the following offenses, that is:

(A)   to unlawfully and knowingly enter into a marriage to evade any provision of the immigration laws, in violation of Title 8, United States Code, Section 1325(c), and

(B)   to knowingly make false statements under oath in any case, proceeding, and matter relating to, and under, and by virtue of any law of the United States relating to naturalization, citizenship, and registry of aliens, in violation of Title 18, United States Code, Section 1015(a).

### Objects, Ways, Manners, and Means of the Conspiracy

The ways, manner, and means by which the conspiracy was carried out included, but were not limited to, the following:

1.   The object of the conspiracy was for co-conspirators Ruslana V. Katushynska and EAP to obtain lawful permanent resident status (and possibly eventual citizenship) in the United States and for co-conspirators Michael Grant Metal and MTV to receive increased BAH payments from the United States Navy based on their fraudulent marriage.

2.   It was part of the conspiracy that co-conspirators Ruslana V. Katushynska, EAP, Michael Grant Metal, and MTV conspired with defendants JARED CANTU and ANNA CANTU and others so that Katushynska and Metal and, thereafter, MTV and EAP could enter into fraudulent marriages for the purpose of obtaining lawful permanent resident status for Katushynska and EAP.

3.   It was further part of the conspiracy that Katushynska and Metal planned to make certain false statements about the status of their marriage and other matters to U.S. Citizenship and Immigration Services (USCIS) officials.

4. It was further part of the conspiracy that Metal and MTV, as service members, would apply for and receive BAH based on their fraudulent marriages.

5. It was further a part of the conspiracy for defendants JARED CANTU and ANNA CANTU to receive money from Katushynska and EAP in exchange for finding American citizens who would be willing to enter into a fraudulent marriage with a foreign national to allow the foreign national to obtain permanent resident status in the United States.

### Overt Acts

In furtherance of this conspiracy and to the effect of its objects, the following acts were committed in the Eastern District of Virginia and elsewhere:

1. In January 2005, Katushynska, who had recently arrived in the United States and living in New York City, contacted Oliynyk who was living in Virginia Beach. Katushynska knew Oliynyk as an acquaintance from her hometown in Ukraine. During that phone call, Katushynska and Oliynyk discussed if Katushynska was interested in marrying an American citizen so that she could continue to reside and work in the United States legally. Oliynyk replied that she was traveling to Ukraine for a long visit, however, she advised Katushynska that someone would get in touch with her about the marriage.

2. In or about early 2005, in Norfolk, Virginia, Metal and his roommate MTV became acquainted with defendants JARED CANTU and ANNA CANTU at a local bar in the Ocean View section of Norfolk. ANNA CANTU was born in Ukraine and was a friend of Olena V. Oliynyk.

3. In or about March 2005, defendant JARED CANTU told MTV that he could arrange for him to marry an eastern European female, that he, JARED CANTU, could set up the marriage and would pay MTV $1,000 for entering into the marriage, and that MTV would be

5

eligible to receive BAH from the Navy. Defendant JARED CANTU told MTV that he, CANTU, would make $5,000 from the deal and that he had set up such marriages in the past. Thereafter, JARED CANTU and MTV advised Metal of this same plan and encouraged him to enter into a fraudulent marriage.

4. In or about April, 2005, after being encouraged by MTV to enter into the marriage because MTV needed the money, Metal agreed to enter into a fraudulent marriage.

5. In or about April 2005, defendant ANNA CANTU called Katushynska in New York City and told her that she had found an American citizen in the Navy who was willing to enter into a fraudulent marriage with her. Defendant ANNA CANTU told Katushynska to come to Norfolk so Katushynska and Metal's marriage could be arranged. Defendant ANNA CANTU further advised Katushynska that she would have to pay her $6,000 for her assistance in the fraudulent marriage.

6. On or about April 25, 2005, Katushynska took a bus from New York City to Norfolk, Virginia, where she was picked up at the bus stop by defendant ANNA CANTU. Katushynska spent the night at the home of defendants JARED and ANNA CANTU.

7. On or about April 26, 2005, in Norfolk, Virginia, defendants JARED CANTU and ANNA CANTU introduced Metal to Katushynska at the CANTU's near the Norfolk Naval Base.

8. On or about April 26, 2005, defendant ANNA CANTU acted as an interpreter between Metal and Katushynska. On that same date, defendant ANNA CANTU drove Metal and Katushynska to the Norfolk Circuit Court so that they could get married.

9. On or about April 26, 2005, Katushynska and Metal completed and signed a Commonwealth of Virginia Marriage Register, falsely listing 140 D View Avenue, Norfolk,

Virginia as their usual residence. Thereafter, they were married by a Marriage Commissioner at the Norfolk Circuit Court Clerk's Office. After the ceremony, defendant ANNA CANTU took photos of Metal and Katushynska so as to make the marriage appear legitimate when Katushynska submitted her petition for legal residency. At no time before or after the marriage did Metal and Katushynska engage in sexual intercourse.

10. On or about April 26, 2005 Katushynska gave defendant ANNA CANTU $6,000 after the marriage ceremony, as had been agreed.

11. On or about April 26, 2005, defendant JARED CANTU gave Metal $1,000 after the marriage ceremony, as he had been promised.

12. On or about April 26, Katushynska, Metal and defendant ANNA CANTU drove to the Norfolk Naval Base where they obtained a military dependant's identification card and military health insurance for Katushynska. Katushynska spend the night at the home of defendants ANNA and JARED CANTU and returned to New York the following day.

13. In or about 2005, Katushynska returned to Norfolk on several occasions to pick up her mail, to obtain documents, and to make preparations for her interview with the United States Citizen and Immigration Service (USCIS). Katushynska stayed with defendants ANNA and JARED CANTU when she came to Norfolk. During those visits, defendant ANNA CANTU advised Katushynska about paperwork she would need for her petition and subsequent interview.

14. On or about July 5, 2005, ANNA CANTU drove to the home of Metal and MTV to pick up MTV and drive him to the marriage ceremony she had arranged for MTV and EAP at the Norfolk Circuit Court Clerk's Office. Prior to the wedding ceremony, MTV and EAP completed and signed a Commonwealth of Virginia Marriage Register, falsely listing their usual

address as 140 D View Avenue, Norfolk Virginia, when, in fact, that was the usual address of Metal and MTV, whereas EAP resided in Pennsylvania before and after the wedding.

15. After July 2005, ANNA CANTU contacted MTV on several occasions to encourage him to assist EAP in preparing her petition to the USCIS.

16. On or about June 20, 2006, in Norfolk, Virginia, Katushynska and Metal made false statements under oath regarding their marriage during an interview with USCIS in Norfolk.

(In violation of Title 18, United States Code, Section 371.)

### Count Two

1. The allegations contained in paragraphs one through eleven of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2. On or about April 26, 2005, in the City of Norfolk, Virginia, in the Eastern District of Virginia, Ruslana V. Katushynska and Michael Grant Metal, aided and abetted by defendants JARED CANTU and ANNA CANTU, knowingly entered into a marriage for the purpose of allowing Ruslana V. Katushynska to evade the provisions of the immigration laws of the United States.

(In violation of Title 8, United States Code, Section 1325(c) and Title 18, United States Code, Section 2.)

8

*United States v. Jared Cantu and Anna Cantu,*               Pursuant to the E-Government Act,
2:07 cr 219                                                     the original of this page has been filed
                                                                                                                              under seal in the Clerk's Office.

                                                 A TRUE BILL:

                                                 **REDACTED COPY**
                                                 _____
                                                 FOREPERSON

CHUCK ROSENBERG
UNITED STATES ATTORNEY

By: _____
Stephen W. Haynie
Virginia State Bar No. 30721
Assistant United States Attorney
Attorney for the United States
U.S. Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number: (757) 441-6331
Office Facsimile: (757) 441-6689
E-mail address: steve.haynie@usdoj.gov